UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:09-CV-00951-TBR

FARHAD HASHEMIAN                                                    PLAINTIFF

v.

LOUISVILLE REGIONAL AIRPORT AUTHORITY,
C.T. MILLER,
MICHAEL BURRIS,
JANET BARROW, and
KAREN SCOTT                                                        DEFENDANTS

MEMORANDUM OPINION

This matter is before the Court upon Defendants' Partial Motion to Dismiss (DN 7). Plaintiff

has filed a response (DN 8). Defendants have filed a reply (DN 11). This matter is now ripe for

adjudication. For the following reasons, Defendants' Motion is DENIED as moot.

Also before the Court is Defendants' Motion to Stay Discovery (DN 10). This matter is now

ripe for adjudication. For the following reasons, Defendants' Motion is DENIED.

Also before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint and Amended

Complaint (DN 22). Plaintiff has filed a response (DN 23). Defendants have filed a reply (DN 24).

This matter is now ripe for adjudication. For the following reasons, Defendants motion is

GRANTED in part and DENIED in part.

BACKGROUND

This case arises from the employment and subsequent termination of Plaintiff, Farhad

Hashemian, by Louisville Regional Airport Authority ("LRAA"). Plaintiff, an Iranian, was

employed at LRAA for 23 years as an Environmental Manager.

On December 23, 2008, Plaintiff filed a Charge of Discrimination with the EEOC for

ongoing national origin discrimination by Defendants. Again, on July 22, 2009, Plaintiff filed a

second Charge of Discrimination with the EEOC. On September 9, 2009, Plaintiff received a Right to Sue letter. Plaintiff alleges retaliation against Plaintiff intensified after he filed his first EEOC charge and continued until he was terminated.

Plaintiff was on Family and Medical Leave Act ("FMLA") leave from August 3, 2009, until October 15, 2009, for his medical condition of coronary artery disease with angioplasty and stenting placement. Plaintiff's physician, Dr. Ishkanian, reviewed Plaintiff's job description and released Plaintiff to return to work stating, "Mr. Hashemian should avoid any outside activity and unnecessary stress since he still suffers from angina pectoris."

On October 15, 2009, Plaintiff returned to work. Prior to his arrival at work he was seen by Occupational Physicians Services ("OPS"). OPS conducted a thorough review of Plaintiff's medical history, conducted a physical examination, reviewed Plaintiff's job description, and determined Plaintiff could return to work with the restrictions set forth in Dr. Ishkanian's return to work note.

Upon arrival at work, Plaintiff states he met with Karen Scott, the Deputy Executive Director of Engineering and Planning and Plaintiff's supervisor, in regard to his work restrictions. On the same day, C.T. Miller, Executive Director, and Michael Burris, Deputy Executive Director Finance and Administration, requested further clarification of Plaintiff's restrictions from Dr. Ishkanian and OPS. Plaintiff worked a complete day on October 15, 2009, but was informed he could not work again until clarification of his work restrictions was produced. On October 16, 2009, Janet Barrow, Director of Human Resources, sent a letter to OPS requesting clarification of Plaintiff's restrictions. A second return to work note from Dr. Ishkanian was provided to OPS on October 20, 2009. Dr. Ishkanian explained:

> My patient Mr. Farhad Hashemian still suffers from partially blocked arteries. Exposure to cold weather will worsen his condition. He should refrain from outdoor

related activities at all times. Mr. Hashemian's job description does not make any direct reference to outdoor work or related assignments, therefore he can perform his duties with the exception of the restriction mentioned above.

Unnecessary stress is also not good for his condition. This being any type of stress outside the routine and expected work. Imposing unreasonable deadlines can create unnecessary stress to any worker.

OPS noted on October 23, 2009, that the time limit of the restrictions had been clarified and the restrictions were permanent.

Plaintiff worked at LRAA from October 22, 2009, until November 4, 2009. During this time no further action was taken by LRAA regarding Plaintiff's work restrictions. On November 4, 2009, at approximately 11:30 a.m., Plaintiff was led by Scott to a conference room where he was terminated in the presence of Barrow and Scott. Plaintiff was given a letter of termination which stated in part, "[Plaintiff's] permanent work restrictions prevent [Plaintiff] from fulfilling a significant amount of the essential duties and responsibilities needed in the position of Environmental Manger." Plaintiff alleges that neither the letter, nor Barrow or Scott, provided examples of how Plaintiff's permanent work restrictions prevented him from fulfilling a significant amount of his essential duties and responsibilities.

While Plaintiff was in the presence of Scott and Barrow receiving his termination letter, Plaintiff alleges his personal bag and the personal belongings in his office were improperly searched by a dog team. Plaintiff alleges Miller requested that Steve Petty, Director of Public Safety, order the search.

After his termination, upon return to his office, Plaintiff was instructed to pack up and leave within ten minutes and anything of his left behind would be shipped to him. Plaintiff alleges Scott and Barrow "offered no expression of empathy, humanity or any concern for [Plaintiff]." Plaintiff

alleges his termination was very different from the termination of other employees who were terminated at the end of the day and allowed sufficient time to collect their belongings. Plaintiff further alleges he was not offered severance or extended medical insurance.

Plaintiff filed the instant action on December 10, 2009, against LRAA. Plaintiff also named C.T. Miller, Executive Director; Michael Burris, Deputy Executive Director Finance and Administration; Janet Barrow, Director of Human Resources; and Karen Scott, Deputy Executive Director of Engineering and Planning, each in their individual and representative capacities. Plaintiff amended his complaint on March 25, 2010 and added Steve Petty, Director of Public Safety, as a defendant both in his individual and representative capacity. Plaintiff alleges claims for violation of and retaliation under Title VII and the FMLA; violation of the Fourth Amendment; and common law claims of outrage, fraud, invasion of privacy, false light, and defamation. Defendants now move the Court to dismiss Plaintiff's Complaint and Amended Complaint for failure to state a claim on which relief can be granted.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that

all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## DISCUSSION

### I. Partial Motion to Dismiss

Defendants initially filed a Partial Motion to Dismiss on January 5, 2010. In response Plaintiff asserted he would file an Amended Complaint to cure specific defects alleged in Defendants' motion. As a result the Court granted Plaintiff time during which to file his Amended Complaint. Plaintiff filed his Amended Complaint on March 25, 2010. The Amended Complaint added a party and alleged several additional claims against Defendants. As a result, Defendants filed a Motion to Dismiss Plaintiff's Complaint and Amended Complaint on April 26, 2010. As this motion more completely addresses the issues now before the Court, the Court denies Defendants' Partial Motion to Dismiss as moot.

### II. Motion to Stay Discovery

After filing their Partial Motion to Dismiss, Defendants filed a Motion to Stay Discovery pending the resolution of the Partial Motion to Dismiss. The Court now denies this motion as moot since the Partial Motion to Dismiss and now pending Motion to Dismiss have been resolved in this Memorandum Opinion and the Order which will follow.

### III.  Motion to Dismiss Plaintiff's Complaint and Amended Complaint

### A. Plaintiff's Title VII Discrimination Claims in Counts I, V, and VII

In order to set forth a claim for discrimination under Title VII, "the plaintiff must show (1) that he is a member of a protected group, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class [or] that similarly situated non-protected employees were treated more favorably." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

### Count I

Plaintiff alleges in Count I of his Amended Complaint that the LRAA paid him less than Caucasian Americans because of his national origin in violation of Title VII.  Defendants argue, first, that Plaintiff failed to allege an adverse employment decision and, second, that Plaintiff failed to allege that similarly-situated non-protected employees were treated more favorably.

An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace."  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006). Generally, it involves changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," and usually "inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761; 762 (1998); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008).

As to this count, Plaintiff alleges LRAA hired Steve Tucker for a position hierarchically ranked below that of Plaintiff but paid him $20,000.00 more than Plaintiff's salary.  However,

Plaintiff also alleges he did not apply for this job; therefore, this allegation does not provide evidence of an adverse employment decision.

Plaintiff next asserts promotion discrimination occurred when he applied for Director of Engineering in the summer of 2008. Plaintiff alleges that Dwight Clayton, whose national origin is American, was hired for the position, although Plaintiff was more qualified. This is a sufficient allegation of an adverse employment decision.

Defendants further assert Plaintiff has failed to allege that similarly-situated non-protected employees were treated more favorably. However, the Court notes that the Sixth Circuit held in *Talley v. Bravo Pitino Restaurant, Ltd.*, that "a plaintiff may satisfy the fourth element by showing *either* that the plaintiff was replaced by a person outside of the protected class *or* that similarly situated non-protected employees were treated more favorably than the plaintiff." 61 F.3d at 1247 (emphasis in original). Plaintiff alleges in his Amended Complaint that the national origin of Clayton was American, which is outside of the protected class. The Court finds that at this stage of litigation Plaintiff has alleged sufficient facts to make a charge of national origin discrimination for failure to promote plausible.

## Count V

Plaintiff alleges in Count V of his Amended Complaint that he was subjected to a dog search of his personal belongings because of his national origin in violation of Title VII. Defendants argue a search does not constitute an adverse employment action for purposes of Title VII. The Court agrees with Defendants. As explained, an adverse employment action typically inflicts direct economic harm and involves a materially adverse change in the terms of employment. *See Burlington Indus., Inc.*, 524 U.S. at 761-62 (1998); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d

876, 885 (6th Cir. 1996). The Court finds Plaintiff has failed to allege an adverse employment action; therefore, Plaintiff's claim set forth in Count V is not plausible and must be dismissed.

### Count VII

Plaintiff alleges in Count VII of his Amended Complaint that he was terminated because of his national origin in violation of Title VII. Defendants argue that Count VII should be dismissed because Plaintiff's allegation that he was terminated because of his national origin is a factually unsupported legal conclusion. Defendants assert Plaintiff's allegation does not raise the right to relief above a speculative level.

After review of both the Complaint and Amended Complaint, the Court finds Plaintiff has sufficiently alleged each of the elements for Title VII national origin discrimination claim. Plaintiff alleged he is a member of a protected group as his national origin is Iranian. He has alleged he was subject to an adverse employment decision: termination. He has also alleged he was qualified for the position by alleging he was "ready, willing and physically able to continue to perform all 'essential duties and responsibilities needed in the position of Environmental Manager.'" Pl.'s Compl. ¶ 32. Finally, he alleged similarly-situated non-protected employees were treated differently. Plaintiff alleged several employees were fired in June 2009 and they were fired at the end of the day and given significantly more time to collect their belongings and leave. The Court finds that at this stage of litigation, Plaintiff has alleged sufficient facts to make a charge of national origin discrimination for termination plausible.

### B. Plaintiff's Title VII Retaliation Claims in Counts II and VIII

Plaintiff alleges in Counts II and VIII of his Amended Complaint that the LRAA retaliated against him in violation of Title VII after he filed two EEOC complaints on January 6, 2009 and July

22, 2009 and received a Right to Sue letter on September 9, 2009.

In order to establish a claim for retaliation under Title VII, the plaintiff must show that

1) he engaged in activity protected by Title VII; 2) this exercise of protected rights was known to Defendants; 3) Defendants thereafter took an adverse employment action against Plaintiff, or Plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and 4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) (citations omitted).

## Count II

In Count II, Plaintiff alleges retaliation in the form of continuing harassment. Defendants argue that Plaintiff has failed to establish actions on the part of Defendants which rise to the level of "materially adverse [employment] action" as defined by the Supreme Court in *Burlington Northern*. 548 U.S. at 68-69. Defendants assert Plaintiff has only alleged "petty slights, minor annoyances, and simple lack of good manners, which are not actionable." Def.'s Mt. to Dismiss 13.

Plaintiff alleges that the Defendants retaliated against him by: calling him at home when he was ill; reporting him for insubordination; imposing unreasonable deadlines; Scott losing her temper; not inviting Plaintiff to a project grand opening; placing him on administrative leave; giving Plaintiff a negative performance evaluation; Plaintiff receiving hostile communications from Scott; reducing Plaintiff's authority and autonomy by requiring him consult Scott prior to enacting certain decisions; terminating Plaintiff's two inspectors, thereby eliminating his work team; and removing Plaintiff's computer and phone access while he was on FMLA leave. Pl.'s Am. Compl. ¶¶ 68-80.

The Court finds that, at this stage of litigation, Plaintiff has alleged sufficient facts to make a claim for retaliation under Title VII plausible. Furthermore, the Supreme Court has held "a

plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' "*Burlington Northern*, 548 U.S. at 68. The Court explained that it phrased the standard in general terms because "[c]ontext matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 69 (quotation omitted). Here, discovery has not yet been completed, therefore the context of the alleged retaliatory action has not been fully explored. Defendants motion to dismiss this count is denied.

### Count VIII

In Count VIII, Plaintiff alleges retaliation in the form of termination. Defendants argue that Plaintiff has failed to establish a causal connection between his protected activity and his termination. Plaintiff argues first that he has established causation due to temporal proximity: he was fired only two months after he received his right to sue letter. Pl.'s Resp. 15. Plaintiff also argues that the reason stated in the termination letter and the manner in which Defendants acted is incongruent with terminating someone for health restrictions. Pl.'s Resp. 15. The facts related to these arguments were alleged in Plaintiff's Complaint and Amended Complaint. These allegations together suffice to allege causation. Plaintiff has sufficiently alleged a prima facie case of Title VII retaliation based on his termination.

### C. Plaintiff's FMLA Retaliation Claims in Count IV and VI against LRAA and Miller

Plaintiff alleges that he was retaliated against for having taken FMLA leave. In order to

make out a prima facie case of retaliation in violation of the FMLA, Plaintiff must show (1) he availed himself of a protected right under the FMLA, (2) he suffered an adverse employment action, and (3) that there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

## Count IV

Plaintiff alleges in Count IV that Defendants harassed him in retaliation for taking FMLA leave. Defendants argue that Plaintiff has not sufficiently alleged an adverse employment action or a casual connection between his leave and the alleged harassment.

Plaintiff alleges Defendants harassed him by: removing his access to his computer, email, phone and voice mail while he was leave; recalculating his leave end date; calling Plaintiff at home; changing his return dates; arguing with him while he was trying to recuperate; and instructing Plaintiff he could not do any more tape recording. Pl.'s Am. Compl. ¶¶ 92-95. Defendants characterize this behavior as "petty slights, minor annoyances and simple lack of good manners, which are not actionable." Def.'s Mt. 15. The Court agrees that this behavior does not rise to the level of an adverse employment action. The Sixth Circuit explained, "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). As in Title VII cases, these adverse employment actions usually cause direct economic harm. Here, there is no allegation of change in Plaintiff's responsibilities or benefits, nor is there an allegation of any behavior which resulted in direct economic harm. Plaintiff has failed to sufficiently plead an adverse employment action under Count

IV, therefore, Plaintiff has failed to establish a prima facie case for FMLA retaliation based on the behavior of Defendants during his leave.[1]

**Count VI**

Plaintiff alleges in this count that Defendants terminated him in retaliation for his taking FMLA leave. Defendants argue Plaintiff has failed to alleged a casual connection between his leave and his termination.

Plaintiff alleges in his Complaint, which is incorporated by reference in the Amended Complaint, that he was terminated nine and a half days after his return from FMLA leave. Pl.'s Compl. ¶ 63. Temporal proximity may provide an inference of causal connection. Additionally, Plaintiff alleges that he was cleared for work by two physicians who concurred that his work restrictions did not conflict with the written job description. This allegation of pretext may also, when considered in conjunction with the timing of his termination, create an inference that he was terminated because of his FMLA leave. At this stage of litigation, Plaintiff has sufficiently alleged a claim for retaliation in violation of the FMLA on the basis of his termination.

Plaintiff also alleged this claim against Miller in his individual and official capacity. Plaintiff in his response voluntarily dismissed this claim.

> **D. Plaintiff's Intentional Tort Claims in Counts III, IX, XI, XII, XIII, XIV, and XV as Against the Authority and the Individual Defendants in their Official Capacities**[2]

---

[1] Plaintiff also alleged this claim against Miller in his individual and official capacity. Plaintiff in his response voluntarily dismissed this claim.

[2] It is unclear from the Amended Complaint whether Counts III, XI, XIII, XIV, and XV were alleged against the individual defendants in both their individual and official capacities.

Defendants assert that Plaintiff's tort claims against LRAA and the individual defendants in their official capacities fail because they are immune from suit under the doctrine of sovereign immunity. In his response, Plaintiff does not dispute that LRAA or individual defendants in their official capacities are immune from suit on the basis of sovereign immunity. Plaintiff only asserts sovereign immunity does not shield the individual defendants in their personal capacities from liability.

Defendants rely on *Comair, Inc. v. Lexington-Fayette Urban County Airport Corp.*, which held that an airport board, airport corporation, and airport board members, in their official capacity, all had sovereign immunity. 295 S.W.3d 91(Ky. 2009). In *Comair*, the Kentucky Supreme Court discussed whether an airport board and its members are "entitled to sovereign, governmental, or other immunity so as to preclude liability in litigation over a tragic air crash." *Id.* at 92-93. The court, after analysis of previous tests for sovereign immunity, explained that courts must first consider the origin of the entity and, more specifically, the immunity status of the parent entity. *Id.* at 99. Second, courts are to consider whether the entity exercises a function integral to state government, e.g., "department, boards, or agencies that are such integral parts of state government as to come within regular patterns of administrative organization and structure." *Id.* Examples of such integral parts of state government include "police, public education, corrections, tax collection and public highways." *Id.*

In *Comair*, the court concluded that the airport board and its members were entitled to sovereign immunity. *Id.* at 102. The court reasoned that while the airport board can be created by

_____

However, the Court will treat these counts as if they were alleged against the individual defendants in both their individual and official capacities.

numerous entities, and it was not clear which entity initially created the board, the parent entity was the Urban County Government which was formed by the merger of the city and county governments. *Id.* at 100. Next, the court found the airport board "carries out a function integral to state government in that it exists solely to provide and maintain part of the Commonwealth's air transportation infrastructure." *Id.* at 101. The court noted this was the most important factor in its determination of sovereign immunity. *Id.* The court explained that the maintenance of the air transportation infrastructure was analogous to the provision of county roads and state highways. *Id.*

In this case, LRAA is an independent, political subdivision of the Commonwealth of Kentucky, established pursuant to Kentucky Revised Statutes § 183.132, as was the airport board in *Comair*. Just as the airport board in *Comair*, LRAA carries out a function integral to state government in that it exists solely to provide and maintain a part of the Commonwealth's air transportation infrastructure.

Although *Comair* did not involve the immunity of employees, e.g., management or administrators, Kentucky law makes it clear these employees are entitled to the same immunity as the LRAA: "When an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).[3]

---

[3] Although not raised by Plaintiff in response to Defendants' Motion to Dismiss, the Court considered Plaintiff's previous argument attempting to distinguish *Comair*. Plaintiff argued that *Comair* does not address sovereign immunity for airport employees, only airport board members. As explained, an employee sued in his or her individual capacity is entitled to the same immunity as the agency for which they work pursuant to *Yanero v. Davis*. 65 S.W.3d 510, 522 (Ky. 2001).

Plaintiff also argued that the Court in *Comair* relied on the articles of incorporation in reaching its decision regarding the sovereign immunity of the airport corporation and the articles of incorporation for the LRAA have not been discussed in this case. The Court need not analyze

14

The Court finds LRAA and its employees, in their official capacities, are entitled to sovereign immunity and are therefore immune from tort liability. Counts III, IX, XI, XII, XIII, XIV, and XV of the Amended Complaint, as against LRAA and the individual defendants in their official capacities, are dismissed.

### E. Plaintiff's Claims for Outrage in Counts III and XII

A prima facie case of outrage requires that Plaintiff show: (1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Humana of Ky., Inc. v. Seitz*, 796 S.W. 2d 1, 2-3 (Ky. 1990)). The Court must determine "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id.* at 788-89 (citing RESTATEMENT (SECOND) OF TORTS § 46(1) cmt. h (1965)).

Kentucky courts have "set a high threshold for outrage claims," *Stringer*, 151 S.W.3d at 791, and in Kentucky, "a claim for the tort of outrage requires the plaintiff to prove conduct which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Humana of Ky., Inc. v. Seitz*, 796 S.W. 2d 1, 3 (Ky. 1990) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). The Kentucky Supreme Court reasoned in *Kroger Co. v. Willgruber* that "citizens in our

---

the articles of incorporation of the LRAA because the LRAA does not have articles of incorporation. LRAA is an airport board, not a corporation. The *Comair* Court analyzed the articles of incorporation in determining the immunity of another defendant in the *Comair* case, the Lexington-Fayette Urban County Airport Corporation. 295 S.W.3d at 102-103.

society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action. It is only outrageous and intolerable conduct which is covered by this tort." 920 S.W.2d 61, 65 (Ky. 1996).

## Count III

Count III remains only against the individual defendants in their individual capacities. In Count III, Plaintiff alleges the following outrageous conduct: Plaintiff was disciplined in December 2008; Scott called Plaintiff at home when he was ill; Scott reported Plaintiff for insubordination; Scott imposed unreasonable deadlines; Scott lost her temper in Plaintiff's office and walked away; Plaintiff was not invited to a project grand opening; Plaintiff was placed on administrative leave; Plaintiff received a negative performance evaluation; Plaintiff received hostile communications from Scott; Scott reduced Plaintiff's authority and autonomy by requiring him consult with her prior to enacting certain decisions; Plaintiff's two inspectors were terminated, thereby eliminating his work team; and Plaintiff was denied computer and phone access while on FMLA leave. Pl.'s Am. Compl. ¶¶ 67-80. Defendants argue Plaintiff has failed to allege conduct which is outrageous.

While there is a high threshold for outrage claims in Kentucky, the plaintiff need not meet this threshold at the time of the filing of the complaint. In fact, the plaintiff need only provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. The facts must be enough to raise the right of relief above the "speculative level" and must be more than labels, conclusions and a recitation of the elements of the cause of action. *Id.* at 1964-65. The essential role of the complaint is to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.* at 1965. The Court finds Plaintiff has meet the burden required to survive a motion to dismiss.

**Count XII**

Count XII remains only against the individual defendants in their individual capacities. In Count XII, Plaintiff alleges outrageous conduct against Defendants for allegedly conducting a secret dog search of Plaintiff's office and personal belongings while Plaintiff was being terminated. Plaintiff alleges that this activity did not happen when other employees were fired and argues in his response that he "was treated as if he committed a crime in violation of national security."

Again, in light of the plausibility standard on a motion to dismiss, the Court finds Plaintiff has sufficiently alleged a claim of outrage as to the individual defendants in their individual capacities.

**F. Plaintiff's Fraud Claim as Against All Defendants in Counts IX and XV**

In order to set forth a claim for fraud, Plaintiff must allege (1) a material representation; (2) the representation is false; (3) the party making the representation knows it to be false or made it recklessly; (4) the representation was made with the intent that it be relied upon; (5) the other party did rely on the misrepresentation; and (6) reliance on the false representation caused injury. *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)). Defendants argue that Plaintiff has not alleged that reliance on the alleged false representation caused his injury.

**Count IX**

Count IX remains only against the individual defendants in their individual capacities. In this count, Plaintiff alleges fraud based on misrepresentations surrounding his termination. Defendants argue that Plaintiff has failed to plead fraud with particularity, Plaintiff pleads merely pretext and Plaintiff has not plead facts sufficient to meet the elements of a fraud claim. Defendants

also argue that Plaintiff's claims against the individual defendants in their personal capacities fail because Plaintiff has failed to allege facts which support his allegation that Defendants acted outside the scope of their employment.

Liberally construing Plaintiff's Amended Complaint, Plaintiff is alleging Defendants misrepresented that he needed to do outside inspections as part of his job duties. Plaintiff may also be alleging Defendants misrepresented the reason for terminating him. As argued by Defendants, this is merely an allegation of pretext, not a claim for fraud. Plaintiff alleges "[t]he fraudulent method used to terminate Plaintiff has caused Plaintiff damages through emotional suffering, mental depression, monetary loss of his salary, his benefits, his retirement accrual, and has created a tainted picture that he is unfit to do any other job, adding to his unemployment time." Pl.'s Compl. ¶ 162. These damages resulted from Plaintiff's termination; however, these damages are not linked to the misrepresentations alleged. Plaintiff's reliance, if any, on the misrepresentations alleged did not cause him to lose his job and therefore did not cause the damages alleged. Plaintiff has failed to allege a claim for fraud which is plausible. Count IX is dismissed.

### Count XV

Count XV remains only against the individual defendants in their individual capacities. In this count, Plaintiff alleges fraud based on misrepresentations surrounding the dog search of his office and personal property. Again, Defendants argue that Plaintiff has failed to plead fraud with particularity, pleads merely pretext and has not plead sufficient facts to set forth the elements of a fraud claim. Defendants also argue that Plaintiff's claims against the individual defendants in their personal capacities fail because Plaintiff has failed to allege facts which support his allegation that Defendants acted outside the scope of their employment.

18

Plaintiff alleges the individual defendants misrepresented the reason why the dog team was called to search his office and personal belongings. Plaintiff also alleges they "fraudulently conceal[ed] their discriminatory and retaliatory motives." Pl.'s Am. Compl. ¶ 238. As in the previous fraud count, this is an allegation of pretext, not a claim for fraud. Again, while Plaintiff has alleged damages from these alleged misrepresentations, these damages are not linked to the misrepresentations alleged. Plaintiff has failed to allege a claim for fraud which is plausible. Count XV is dismissed.

### G. Plaintiff's Fourth Amendment Claim in Count X

Plaintiff alleges an unreasonable search in violation of the Fourth Amendment against all defendants. This claim is based on the alleged search of Plaintiff's office and personal belongings by a dog without Plaintiff's knowledge or consent, while he was being terminated. Defendants argue the search was not unreasonable since the search was pursuant to an investigation of suspected work-related employee misconduct.

The Fourth Amendment was established to protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV*; see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). In *O'Connor v. Ortega*, the Supreme Court held it is not a Fourth Amendment violation when a public employer conducts a search of an employee's office "for legitimate work-related, noninvestigatory intrusions as well as investigations of work-related misconduct." 480 U.S. 709, 725 (1987). The Court went on to hold that

> public employer intrusions on the constitutionally protected privacy interests of
> government employees for noninvestigatory, work-related purposes, as well as for
> investigations of work-related misconduct, should be judged by the standard of
> reasonableness under all the circumstances. Under this reasonableness standard, both

the inception and the scope of the intrusion must be reasonable.

*Id.* at 725-26.

While Defendants have argued there was not a Fourth Amendment violation because they were investigating potential suspected employee misconduct, Plaintiff has sufficiently alleged that the search was unreasonable. *See* Pl.'s Am. Compl. ¶177. Plaintiff argues "it is unreasonable to claim that Plaintiff is terminated for no [misconduct], then claim his personal belongings were searched for suspected [misconduct]." Pl.'s Resp. 19. Plaintiff has asserted a plausible claim for violation of the Fourth Amendment against LRAA and the individual defendants in their official capacities.

Defendants also argue that Plaintiff has failed to allege how any of the individual defendants have acted outside the scope of their employment. While Plaintiff did not address this argument in his response, Plaintiff did remark that "[t]he wrongs committed by Defendants . . . were planned in secret and committed with intent to harm the Plaintiff which is certainly outside the scope of their employment." Pl.'s Resp. 21. The Court finds, though, that Plaintiff has alleged each of these defendants "acted outside the scope of their employment." Pl.'s Am. Compl. ¶ 173. At this stage of the litigation Plaintiff has alleged enough to make it plausible that Defendants were acting outside the scope of their employment.

### H. Plaintiff's Invasion of Privacy Claim Against Individual Defendants in Count XI

Plaintiff alleges invasion of his privacy against the individual defendants based on the search of his office and personal property during his termination. This count remains against the individual defendants in their individual capacities only.

Kentucky has adopted the Restatement (Second) of Torts definition of invasion of privacy which includes four causes of action: unreasonable intrusion upon the seclusion of another; appropriation of the other's name or likeness; unreasonable publicity given to the other's private life; or publicity that unreasonably places the other in a false light before the public.. *Cheatham v. Paisano Publications, Inc.*, 891 F.Supp. 381, 384-85 (W.D. Ky. 1995); RESTATEMENT (SECOND) OF TORTS (1976) § 652. Plaintiff does not specify in his Amended Complaint which cause of action he is bringing; however, based on the Amended Complaint, the Court finds Plaintiff is alleging unreasonable intrusion upon seclusion. This cause of action applies when a party 'intentionally intrudes' upon the private affairs or concerns' of another and such 'intrusion would be highly offensive to the reasonable person.'" *Washington v. City of Georgetown*, No. 08-402-KSF, 2009 WL 530782, *5 (E.D. Ky. March 3, 2009) (quoting RESTATEMENT (SECOND) OF TORTS § 652B).

Defendants argue that an employer entering an employee's office for legitimate business reasons does not amount to invasion of privacy. However, Plaintiff alleges, first, that he was no longer an employee at the time of the search and, second, that there were no legitimate or reasonable business reasons for the search. Pl.'s Am. Compl. ¶¶ 183; 191-193,195. Plaintiff alleges he had an expectation of privacy in the property searched and an inference can be made that the intrusion would be highly offensive based on the alleged damages. Pl.'s Am. Compl. ¶185; 197-198. Plaintiff has alleged sufficient facts to make it plausible that the individual defendants intruded upon his seclusion.

Defendants also argue that Plaintiff has failed to allege how any of the individual defendants have acted outside the scope of their employment. As noted previously, Plaintiff did not address this argument in his response but asserted that "[t]he wrongs committed by Defendants . . . were planned

in secret and committed with intent to harm the Plaintiff which is certainly outside the scope of their employment." Pl.'s Resp. 21. Plaintiff has alleged each of these defendants "acted outside the scope of their employment." Pl.'s Am. Compl. ¶179. Plaintiff has also alleged that there were no legitimate or reasonable business reasons for the search. Pl.'s Am. Compl. ¶¶191-193,195. At this stage of the litigation Plaintiff has alleged enough facts to make it plausible that Defendants were acting outside the scope of their employment.

## I. Plaintiff's False Light Claim in Count XIII

Plaintiff alleges he was publicly portrayed in a false light by the individual defendants after the search of his office and personal belongings. This count remains against the individual defendants in their individual capacities only.

A claim of false light, under Kentucky law, requires a showing that "(1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky. 1981) (citing RESTATEMENT (SECOND) OF TORTS, § 652E (1976)).

Defendants argue that Plaintiff has failed to allege that any of the individual defendants unreasonably published or publicized to the public any negative false characteristic, conduct, or belief about Plaintiff. Plaintiff does not address this argument in his response. Plaintiff does, however, allege in his complaint that "employee(s) in the Mayor's office have been informed about the dog search of Plaintiff by the Defendants." Pl.'s Am. Compl. ¶ 221. Although somewhat ambiguous, when interpreting this paragraph in favor of the Plaintiff, it appears Plaintiff is alleging

that Defendants informed employees in the mayor's office about the dog search of Plaintiff.[4] This allegation combined with Plaintiff's further allegations that the search itself portrayed him as a security threat make a claim for false light plausible at this stage of litigation.

Next, Defendants argue that Plaintiff has failed to allege how any of the individual defendants have acted outside the scope of their employment. Although Plaintiff did not address this argument in his response, Plaintiff did state that "[t]he wrongs committed by Defendants . . . were planned in secret and committed with intent to harm the Plaintiff which is certainly outside the scope of their employment." Pl.'s Resp. 21. Plaintiff has alleged each of these defendants "acted outside the scope of their employment." Pl.'s Am. Compl. ¶ 211. At this stage of the litigation Plaintiff has alleged enough facts to make it plausible that Defendants were acting outside the scope of their employment.

### J. Plaintiff's Defamation Claims in Count XIV

Plaintiff alleges he was defamed when Defendants wrongly searched his office and personal belongings. This count remains against the individual defendants in their individual capacities only. Plaintiff alleges "Defendants made a false statement in conducting the K-9 search of Plaintiff's personal belongings and office, then afterward conveying to others the fact that the search was necessary as conducted." Pl.'s Am. Compl. ¶ 227. Plaintiff further alleges "[t]he implied 'need' for the K-9 dog search, published by word of mouth, traveled from Defendants outward to the

---

[4] This paragraph can also be interpreted to mean that the employees in the mayor's office were informed about the dog search that was conducted by the Defendants, rather than they were informed by Defendants. Based on the placement of "by the Defendants" following "the K-9 search of Plaintiff" it is more likely this was the allegation intended by Plaintiff. However, the Court must liberally construe the Amended Complaint in favor of Plaintiff. Therefore, the Court will apply the interpretation which favors Plaintiff.

community." Pl.'s Am. Compl. ¶ 229.

A claim for defamation under Kentucky law requires Plaintiff show: (1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981). Kentucky courts recognize both libel and slander. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004). "Defamation by writing and by contemporary means analogous to writing . . . is libel. Defamation communicated orally is slander." *Id.* at 793 (citation and internal quotation marks omitted). Defendants assert that no Kentucky case has ever "held that a mere act, without more, is sufficient to constitute 'language' under the first element of defamation." Def.'s Mt. 34. However, liberally construing Plaintiff's Amended Complaint, as the Court must, the Court finds Plaintiff has sufficiently alleged more than the mere act of the dog search. Plaintiff alleges that it was "covey[ed] to others the fact that the search was necessary" and "the implied 'need' for the . . . dog search, published by word of mouth, traveled from Defendants outward to the community." These are sufficient allegations of defamatory "language" to survive a motion to dismiss.

Defendants also argue that Plaintiff has failed to allege how any of the individual defendants have acted outside the scope of their employment. Plaintiff did not address this argument in his response. Plaintiff did, however, contend that "[t]he wrongs committed by Defendants . . . were planned in secret and committed with intent to harm the Plaintiff which is certainly outside the scope of their employment." Pl.'s Resp. 21. Plaintiff has alleged each of these defendants "acted outside the scope of their employment." Pl.'s Am. Compl. ¶ 226. At this stage of the litigation Plaintiff has alleged enough facts to make it plausible that Defendants were acting outside the scope of their employment.

The Court strongly encourages Plaintiff to narrow the issues.  Clearly, Plaintiff has pled a cafeteria complaint and probably some overly ambitious claims.  The evaluation of Defendants' motion is complicated by the redundance, length and incorporation of all facts in Plaintiff's Complaint.  The Court may have given Plaintiff the benefit of some doubt.  The Court suspects that after some discovery many of the claims will be the subject of a motion for summary judgment.  In the same breath, while defendant's motion had arguable merit in most respects, it too may have been too much.  The Court expects the parties to confer prior to the pretrial conference. The Court expects Plaintiff to narrow the claims.

## CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss is DENIED.

Defendants' Motion to Stay Discovery is DENIED.

Finally, Defendants' Motion to Dismiss Plaintiff's Complaint and Amended Complaint is GRANTED in part and DENIED in part. Counts III, XI, XII, XIII and XIV are dismissed against LRAA and the individual defendants in their official capacities, but remain against the individual defendants in their individual capacities. Counts IV, V, IX and XV are dismissed in their entirety. Count VI is voluntarily dismissed by Plaintiff against Miller, but remains against LRAA.  All other claims remain.  An appropriate order shall issue.